UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff/Respondent,

    v.

GREER McCORMICK,

    Defendant/Movant.
_____/

CASE NO. 01-CR-80306-DT-01
04-CV-74512-DT
JUDGE GERALD E. ROSEN
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

II.    <u>REPORT</u>:

A.    *Procedural Background*

Defendant/movant Greer McCormick is a federal prisoner currently confined at the United States Penitentiary II in Coleman, Florida. On April 18, 2002, defendant was charged in a First Superseding Indictment with two counts of felon in possession of a firearm, 18 U.S.C. § 922(g). The charges stemmed from two traffic stops in which defendant was found in possession of a firearm. Attorney Walter Pookrum was appointed to represent defendant.

On July 16, 2002, the Government and defendant entered into a Rule 11 plea agreement, pursuant to which defendant agreed to plead guilty to one count of the Indictment in exchange for dismissal of the other count. The plea agreement also capped defendant's sentence at the high end of the Sentencing Guidelines range, calculated to be 71 months' imprisonment. On that same date,

1

defendant entered his plea. Defendant indicated that his counsel had explained to him the terms of the plea agreement and the charges against him, and that he understood the plea terms and the charges against him. Defendant also indicated that he was satisfied with counsel's advice and representation. *See id*. at 12-13. The Court then explained to defendant the charges against him, and the potential maximum sentence under § 922(g)(1). *See id*. at 14. Defendant indicated that he understood that his sentence would be determined by the Guidelines, and that counsel had explained the Guidelines to him. *See id*. at 14-15. The Court explained to defendant the rights he was giving up by pleading guilty, and defendant indicated that he understood those rights. *See* Plea Hr'g Tr., dated 7/16/02, at 15-19. The prosecutor then explained the terms of the plea agreement, and both counsel and defendant indicated that the prosecutor accurately set forth the terms of the agreement. *See id*. at 20-24. Defendant denied that anyone had made any other promises to induce his plea, and that anyone had tried to pressure or coerce his plea. *See id*. at 24-25. Defendant indicated that he was pleading guilty freely and voluntarily, and that it was his own decision to plead guilty. *See id*. at 25-26. The Court then elicited from defendant a factual basis to support the plea. *See id*. at 26-28. The Court then accepted defendant's plea. *See id*. at 29.

After a brief discussion between defense counsel and defendant, it became clear that there was an inaccuracy in the presentence report regarding one of defendant's prior convictions. The Court suggested that counsel and the prosecutor discuss this issue, and advise the Court if it changed the status of defendant's plea. *See id*. at 31-32. Subsequently, the Court granted defendant's request for a change of counsel, appointing William Daniel to represent defendant. The government then submitted to defendant, through Mr. Daniel, a revised Rule 11 plea agreement based on the corrected information regarding defendant's criminal history. Under this revised agreement, defendant's

Guideline range was calculated as 92-115 months. The agreement capped defendant's sentence at the low end of this range, 92 months. *See* Gov't's Resp., Ex. A. According to Daniel, he met with defendant to discuss the revised agreement, and explained that under the agreement defendant's sentence would be capped at 92 months. Daniel also explained to defendant that he was giving up his right to appeal his sentence so long as the court sentenced defendant to 92 months' imprisonment or less. *See id*., Ex. B, Decl. of William Daniel, ¶¶ 3-4.

On January 30, 2004, defendant appeared for sentencing. At that time, defendant indicated that he wished to plead guilty under the revised Rule 11 agreement. *See* Sentence Tr., dated 1/30/04, at 5-6. The Court reminded defendant of the rights he was giving up by pleading guilty, and defendant indicated that he still wished to waive his trial rights and proceed with his plea. *See id*. at 7. The Court then sentenced defendant to a term of 92 months' imprisonment. *See id*. at 19.

On November 11, 2004, defendant filed this motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Defendant contends that he was denied his Sixth Amendment right to the effective assistance of counsel. Specifically, defendant contends that counsel was ineffective for failing to: (1) object to his sentence; (2) object to the violation of his plea agreement; and (3) file an appeal. Defendant also raises each of these claims as an independent, substantive basis for relief. The government filed a response to the motion on May 7, 2008, arguing that defendant's claims are without merit. For the reasons that follow, the Court should deny defendant's motion.

B.  *Analysis*

    1.  *Constitutionality of Sentence*

Defendant asserts that his sentence violated his right to a jury trial on all elements of the offense, under a line of cases narrowing the sentencing discretion of judges. The line of cases begins

with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

In *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 232-33, and rejecting the government's attempts to distinguish the two, *see id*. at 237-44, the merits

majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id.* at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Defendant's *Apprendi* claim fails for two reasons. First, defendant entered into a Rule 11 plea agreement, which included attached Sentence Guidelines worksheets. These worksheets included all of the facts upon which the Court based its sentence. By signing the agreement and entering a plea pursuant to the agreement, defendant stipulated to all of the facts upon which the Court based its sentence. Thus, there was no Sixth Amendment violation under *Apprendi* and its progeny. *See United States v. Dillard*, 438 F.3d 675, 684-85 (6th Cir. 2006).

Second, regardless of the merits of defendant's claim it is barred by the non-retroactivity principle established by the Court in *Teague v. Lane*, 489 U.S. 288 (1989). As the Supreme Court has recently explained:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States,* 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks,* 494 U.S. 484, 494-495 (1990); *Teague v. Lane,* 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620 (quoting

5

> *Davis v. United States,* 417 U.S. 333, 346 (1974)).
>
> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra,* at 495 (quoting *Teague,* 489 U.S., at 311). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." *Id.,* at 313 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any . . . 'ha[s] yet to emerge.'" *Tyler v. Cain,* 533 U.S. 656, 667, n. 7 (2001) (quoting *Sawyer v. Smith,* 497 U.S. 227, 243 (1990)).

*Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (footnote and parallel citations omitted).

Neither *Apprendi* nor *Blakely* provides a basis for relief on defendant's claim. At the time of petitioner's conviction, courts uniformly had held that the rule of *Apprendi* did not apply to the Sentencing Guidelines. *See United States v. Hughes*, 369 F.3d 941, 947 (6th Cir. 2004); *United States v. Helton*, 349 F.3d 295, 299-300 (6th Cir. 2003); *United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002); *cf. Harris v. United States*, 536 U.S. 545, 567-69 (2002). Similarly, *Blakely* explicitly declined to rule on the applicability of the Court's holding to the federal Guidelines, and the majority of post-*Blakely* courts addressing the question, including the Sixth Circuit, have concluded that *Blakely* did not affect the Sentencing Guidelines. *See United States v. Koch*, 383 F.3d 436, 439-43 (6th Cir. 2004) (en banc); *United States v. Hammond*, 381 F.3d 316, 345 (4th Cir. 2004) (en banc); *United States v. Mincey*, 380 F.3d 102, 105 (2d Cir. 2004). Thus, *Booker* alone governs defendant's claim. *See Humphress v. United States*, 398 F.3d 855, 857, 860 (6th Cir. 2005). Defendant cannot benefit from *Booker*, however, because *Booker* was decided after his conviction and sentence became final and that decision does not apply retroactively to cases on collateral review. *See Valentine v. United States*, 488 F.3d 325, 330 (6th Cir. 2007); *Humphress*, 398 F.3d at

860. Because *Blakely* does not affect the constitutionality of defendant's sentence, and because defendant's conviction became final prior to the Court's decision in *Booker*, the Court should conclude that defendant is not entitled to relief on this claim.

2.      *Sentence's Compliance with Plea Agreement*

Defendant also contends that his sentence violates his plea agreement, because the agreement called for no more than a 71-month sentence. While it is true that the initial plea agreement capped defendant's sentence at 71 months, it became apparent at the time that the Court took defendant's plea that the criminal history upon which the plea agreement was based was inaccurate. After the correct criminal history was determined, defendant's Guidelines range was recalculated as 92-115 months. The new range was explained to defendant at sentencing, and defendant indicated that he still desired to plead guilty with the new sentence cap of 92 months' imprisonment. *See* Sentence Tr., at 4-6. Thus, defendant agreed to the terms of the revised plea agreement and his sentence did not violate the terms of the agreement. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

3.      *Denial of Right to Appeal*

Defendant next contends that he was denied his right to appeal. However, in the initial plea agreement, defendant agreed to waive his right to appeal so long as the sentence did not exceed the sentence cap in the plea agreement. During the plea colloquy, the government explained without objection from defendant or his counsel that the plea deal included defendant's agreement "not to challenge the constitutionality or legality of the sentencing guidelines or appeal based on anything he's agreed to in the worksheets or the . . . Rule 11 Agreement itself." Plea Tr., at 23. In the revised plea agreement, defendant agreed to the following provision: "If the court imposes a sentence equal

to or less than the maximum sentence described in this agreement, defendant waives any right he may have to appeal his conviction or sentence, including any right under 18 U.S.C. § 3742 to appeal on the grounds that the sentence was imposed as a result of an incorrect application of the sentencing guidelines." Gov't's Resp., Ex. A, ¶ 14. Defendant's sentencing counsel explained to defendant that he was giving up his right to appeal so long as the Court did not impose a sentence greater than 92 months. *See id*., Ex. B, Decl. of William Daniel, ¶ 4. After imposing sentence, the Court said to defendant, "You have waived your right to appeal, so you have no more further rights to appeal since I accepted the revised plea agreement and sentenced within the cap of the limitation in the plea agreement." Sentence Tr., at 21. This appellate waiver was valid. *See Dillard*, 438 F.3d at 684-85; *United States v. McGilvery*, 403 F.3d 361, 362-63 (6th Cir. 2005). Thus, defendant was not denied his right to appeal because he voluntarily waived that right. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

    4.        *Ineffective Assistance of Counsel*

Finally, defendant contends that his counsel was ineffective for failing to challenge his sentence under *Blakely* and the plea agreement, and for failing to file a direct appeal. The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry

if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Here, defendant cannot show that counsel was ineffective. As explained above, defendant's sentence is consistent with both *Blakely* and the terms of the revised plea agreement. Further, counsel indicated at the sentencing hearing that he had explained the terms of the revised agreement to defendant, and defendant indicated that he understood those terms and wanted to plead guilty pursuant to the revised agreement, which included the new sentencing cap of 92 months. Thus, defendant cannot show that counsel was ineffective for failing to object to his sentence. Likewise, defendant cannot show that counsel was ineffective for failing to file a direct appeal, because defendant waived his right to appeal his plea or sentence if the Court sentenced him to no more than 92 months' imprisonment. *See Nunuz v. United States*, ___ F.3d ___, ___, 2008 WL 4459253, at

9

*3-*4 (7th Cir. Oct. 6, 2008); *United States v. Mabry*, 536 F.3d 231, 239-42 (3d Cir. 2008); *United States v. Johnson*, No. 05-CR-80050, 2008 WL 565463, at *4 (E.D. Mich. Feb. 29, 2008) (Borman, J., adopting Recommendation of Morgan, M.J.). Accordingly, the Court should conclude that defendant is not entitled to relief on his ineffective assistance of counsel claims.

D. *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255. Accordingly, the Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically,

and in the same order raised, each issue contained within the objections.

                                       s/ PAUL J. KOMIVES
                                       PAUL J. KOMIVES
                                       UNITED STATES MAGISTRATE JUDGE

Dated: October 30, 2008

       I hereby certify that a copy of the foregoing document was served upon Greer McCormick, Reg. No. 29481-039, FDC Oakdale, P. O. Box 5010, Oakdale, LA 71463 and counsel of record on October 30, 2008, by electronic and/or ordinary mail.

                                         S/William F. Lewis
                                         Case Manager